**Hearing Date:  June 4, 2026 at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: May 28, 2026 at 4:00 p.m. (prevailing Eastern Time)**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1**

**A.Y. STRAUSS LLC**
Eric H. Horn, Esq.
David S. Salhanick, Esq.
Maria A.G. Harper, Esq.
290 West Mount Pleasant Avenue, STE 3260
Livingston, New Jersey 07039
Tel. (973) 287-5006
Fax  (973) 533-0127

*Counsel to the Debtors and*
*Debtors-in-Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| Camp Louemma Lane Inc., *et al.*, | Case No. 25-15658 (EJO) |
| Debtors. | (jointly administered) |

**NOTICE OF DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO  11 U.S.C. § 105 AND FED. R. BANKR. P. 9019 (I) APPROVING THE SETTLEMENT BY AND AMONG THE DEBTORS AND THE LENDER, AND (II) GRANTING RELATED RELIEF**

PLEASE TAKE NOTICE that on the date hereof, the above-captioned debtors and debtors in possession (the "***Debtors***") filed the above-referenced motion (the "***Motion***") with the United States Bankruptcy Court for the District of New Jersey (the "***Court***").

PLEASE TAKE FURTHER NOTICE that any objections or responses to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the District of New Jersey and shall be filed with the Court electronically by registered users of the Court's case filing system, and by all other parties in interest, on a compact disc or flash drive (preferably in Portable Document Format (PDF), Microsoft Word, or any other Windows-based word processing format) with a hard copy delivered to the chambers of the Honorable Eamonn J. O'Hagan

and shall be served so as to be actually received by no later than **May 28, 2026 at 4:00 p.m. (prevailing Eastern Time)** (the "*Objection Deadline*") by the following: A.Y. Strauss LLC, 290 West Mount Pleasant Avenue, Suite 3260, Livingston, New Jersey 07039, Attn: Eric H. Horn, Esq.

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider such Motion and any objections related thereto will be held (in the event of any such objections or responses) before the Honorable Eamonn J. O'Hagan of the United States Bankruptcy Court for the District of New Jersey, Clarkson S. Fisher U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608 on **June 4, 2026 at 10:00 a.m. (prevailing Eastern Time)**.

Dated: April 30, 2026

**A.Y. STRAUSS LLC**

By: */s/ Eric H. Horn*
      Eric H. Horn, Esq.
      David S. Salhanick, Esq.
      Maria A.G. Harper, Esq.
      290 West Mount Pleasant Avenue, STE 3260
      Livingston, New Jersey 07039
      Tel. (973) 287-5006
      Fax  (973) 533-0127

      *Counsel to the Debtors*
      *and Debtors-in-Possession*

<table>
<tr><td>

**UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF NEW JERSEY**
*Caption in Compliance with D.N.J. LBR 9004-1(a)*

</td><td></td></tr>
<tr><td>

**A.Y. STRAUSS LLC**
Eric H. Horn, Esq.
David S. Salhanick, Esq.
Maria A.G. Harper, Esq.
290 West Mount Pleasant Avenue, Suite 3260
Livingston, New Jersey 07039
Tel. (973) 287-5006
Fax (973) 533-0127


*Counsel to the Debtors and
Debtors in Possession*

</td><td></td></tr>
<tr><td>

In re:


Camp Louemma Lane Inc., *et al.*,

Debtors.

</td><td>

Chapter 11

Case No. 25-15658 (EJO)

(Jointly Administered)

</td></tr>
</table>

**DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO  11 U.S.C. § 105
AND FED. R. BANKR. P. 9019 APPROVING THE SETTLEMENT BY AND AMONG
THE DEBTORS AND THE LENDER, AND (III) GRANTING RELATED RELIEF**

Camp Louemma Lane Inc. and 11 Louemma Lane LLC, each a debtor and debtor in possession herein (collectively, the "***Debtors***"), by and through their undersigned counsel, hereby move the Court for the entry of an order (i) approving the settlement agreement (the "***Settlement Agreement")*** by and between (a) each of the Debtors, on the one hand, and (b)  of L&L Capital Partners LLC, on the other hand (the "***Lender***" and, collectively with the Debtors, the "***Parties***"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (as amended, the "***Bankruptcy Rules***") and Section 105 of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq*. (as amended, the "***Bankruptcy Code***"), (ii) and granting related relief (the "***Motion***").  In support of the Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue of these cases and this Motion are proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief sought herein are sections 305(a), 349 and 1112(b), 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 6004, 9019, 1017(a) and 2002(a)(4).

## BACKGROUND

### I.      Procedural Background

3.      On May 29, 2025 (the "*Petition Date*"), each of the Debtors filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code in in this Court, thereby commencing these chapter 11 cases (the "*Bankruptcy Cases*").

4.      The Debtors continue to operate their business and manage its property as a debtor-in-possession in accordance with §§1107 and 1108 of the Bankruptcy Code.

5.      The Debtors own two parcels of real property located at (i) 43 Louemma Lane, Sussex, New Jersey 07461 (the "*Camp Property*") and (ii) 11 Louemma Lane, Sussex, New Jersey 07461 (the "*Louemma Property*" and together with the Camp Property, the "*Properties*"). The Camp Property is an approximately 150-acre recreational summer camp facility with substantial improvements (including multiple buildings, athletic and recreational amenities, and a private lake).

6.      L&L is the holder of mortgage and related loan documents secured by the Properties and that it obtained a foreclosure judgment in state court. L&L also contends that, as of

2

the Petition Date, its claim exceeded $5.6 million and that additional interest, costs, and fees continue to accrue.

7.      The Debtors and the Lender have worked towards a resolution of the issues between the other and have entered into a proposed settlement.  The terms of the settlement were memorialized in the Settlement Agreement, which took substantial time to draft and finalize, and which is attached hereto, marked as **Exhibit A** and incorporated by reference herein.

## **RELIEF REQUESTED**

8.      Through the Motion, the Debtors seek the entry of an order approving the settlement as embodied in the Settlement Agreement and granting related relief (the "***Order***").  A copy of the Order is filed with this Motion as **Exhibit B**.

9.      The salient terms of the Settlement Agreement are as follows:

| Salient Terms | Subject to the terms of this Agreement and provided no Termination Event occurs, Lender agrees not to (a) conduct a foreclosure sale of the property encumbered by the Loan Documents ("**Property**") prior to June 7, 2026 (the "**Forbearance Expiration Date**") and (b) prosecute or otherwise take any action whatsoever to move the Guaranty Action toward judgment or other resolution.  The period from the Execution Date through June 6, 2026 shall be referred to as the "**Forbearance Period**."  The forbearance by Lender, subject to the terms and conditions of this Agreement, is referred to as the "**Forbearance Covenant**." Borrower agrees that the Forbearance Covenant does not relate or extend to any actions that Lender has taken prior to the Execution Date or that Lender may take under the Loan Documents or this Agreement, in equity or at law (x) to preserve and protect the Collateral or the interests of Lender in the Collateral, including, without limitation, (i) the filing of actions, or the defending of or intervention in actions (such as foreclosure proceedings) brought by third parties or by Borrower relating to the Collateral or the interests of Lender therein or (ii) the sending of notices to any persons or entities concerning the existence of |
|---|---|

3

|  | security interests or liens in favor of Lender relating to the Collateral, or (y) in anticipation of instituting or continuing enforcement actions or exercising other remedies under the Loan Documents upon the termination or expiration of the Forbearance Period, including, without limitation, serving, filing or publishing any demands or notices required by contract or statute. Borrower further acknowledges that the Loan will remain in special servicing during the Forbearance Period and until such time as the Debt is paid in accordance with this Agreement in full.

Forbearance Payment. On or before the Forbearance Expiration Date, the Borrowers shall either (i) file and confirm a Plan of Reorganization in a form acceptable to the Lender which authorizes, requires and pays the Lender or dismisses the Chapter 11 case. Both options shall require the Borrower to pay to the Lender the amount of Five Million, Five Hundred Thousand Dollars ($5,500,000.00) (the "**Plan Payment**") on or before the Forbearance Effective Date.

Notwithstanding the Forbearance Payments required by **Section 4.2(a)** or any other provision to the contrary set forth in this Agreement or the other Loan Documents, as of and following the Effective Date and during the Forbearance Period, interest on the then outstanding principal balance of the Loan shall accrue at the Default Interest Rate of 24% as set forth in the Loan Documents which shall be chargeable against the Borrower and Guarantors and due and payable in the event of a Termination Event.

Prior to the Forbearance Expiration Date, Lender will accept the payment of the Plan Payment in full satisfaction of the obligations of Borrower and Guarantors under the Loan Documents. |

10. The discussion of the terms of the Settlement Agreement contained herein is intended as a summary only. To the extent that there are any discrepancies between the summary contained in the Motion and the terms contained in the Settlement Agreement, the Settlement Agreement shall control.

4

**LEGAL ANALYSIS**

**The Court Should Approve the Settlement Under Bankruptcy Rule 9019**

11.     Settlements in bankruptcy are favored as a means of minimizing litigation, expediting the administration of the bankruptcy estate, and providing for the efficient resolution of bankruptcy cases. *Meyers v. Martin* (*In re Martin*), 91 F.3d 389, 393 (3d Cir. 1996).  To achieve these results, Bankruptcy Rule 9019(a) empowers a bankruptcy court to approve a compromise or settlement by a trustee after notice and a hearing.

12.     In applying this rule, a bankruptcy court should approve a settlement if it is fair and equitable and is in the best interest of the estate.  *In re Cajun Electric Power Cooperative, Inc.*, 119 F.3d 349, 355 (5th Cir. 1997).  To properly make this determination, a bankruptcy judge "must assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal."  *Id.* at 356.  *See also Martin*, 91 F.3d at 393.

13.     The United States Court of Appeals for the Third Circuit has provided four criteria that a bankruptcy court must consider approving a settlement agreement.  Specifically, the bankruptcy court must examine: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. *Id.*

14.     In addition to these criteria, courts have scrutinized additional factors.  These additional factors include: (1) the competency and experience of counsel who support the settlement; (2) the relative benefits to be received by individuals or groups within the class, (3) the nature and breadth of releases to be obtained by the parties to the settlement; and (4) the extent to which the settlement is the product of arm's length bargaining.  *In re 47-49 Charles Street, Inc.*,

5

209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Spielfo Gel*, 211 B.R. 133, 144 (Bankr. S.D.N.Y. 1997);

*In re Dow Corning Corp.*, 198 B.R. 214, 223 (Bankr. E.D. Mich. 1996).

15.   The Debtors submit that the Motion meets the standards articulated above.  The Settlement Agreement resolves the multiple and various claims and issues between the Parties and that would require substantial litigation.  The Settlement resolves the outstanding disputes without the costs and risks of further litigation and further provides for a pathway to satisfy the amounts owing to the Lender in these cases.  The resolution was facilitated through various rounds of negotiations, with consideration by the Parties of all the *Martin* factors, with the assistance of competent and experienced counsel on all sides and was a resolution that was the product of arm's length bargaining.

## WAIVER OF MEMORANDUM OF LAW

16.   The Debtors represent that the facts and circumstances set forth herein do not present novel questions of law, and, as such, respectfully request that this Court waive the requirement of filing a memorandum of law in accordance with Rule 9013-1 of the United States Bankruptcy Court, District of New Jersey.

## NOTICE

17.   Notice of this Motion will be given to: (i) the Office of the United States Trustee for Region 3; (ii) counsel for the Lender; (iii) all creditors listed on Debtors' schedules or that have filed proofs of claim against any of the Debtors; (iv) all holders of equity interests; (v) all parties that have entered an appearance and requested notice in the Bankruptcy Cases; (vi) all other parties entitled to notice pursuant to Bankruptcy Rules 2002 and 6004; and (vii) all persons who might reasonably be expected to be affected by the transaction contemplated herein. The Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

18.     No previous request for the relief sought herein has been made to this Court or any other court.

*[remainder of page intentionally left blank]*

## CONCLUSION

**WHEREFORE**, for all the foregoing reasons, the Debtors respectfully request that the Court enter an order in the form attached hereto granting the Motion and granting such other and further relief as is just and equitable.

Dated: April 30, 2026                                  Respectfully submitted,

**A.Y. STRAUSS LLC**


By:  */s/ Eric H. Horn*
Eric H. Horn, Esq.
Heike M. Vogel, Esq.
Maria A.G. Harper, Esq.
290 West Mount Pleasant Avenue, Suite 3260
Livingston, New Jersey 07039
Tel. (973) 287-5006
Fax (973) 533-0127

*Counsel to the Debtors and*
*Debtors in Possession*

8

## EXHIBIT A

[Settlement Agreement]

## FORBEARANCE AGREEMENT

THIS FORBEARANCE AGREEMENT ("**Agreement**") is entered into as of April    ,
2026 ("**Execution Date**") but effective on the date upon which this Agreement is approved by
Order of the Bankruptcy Court for the District of New Jersey. ("**Effective Date**"), between **L&L
CAPITAL PARTNERS LLC,** with an address at                                    ("**L&L**");
**PARK NATIONAL CAPITAL FUNDING LLC,** with an address at 25 Smith Street, Suite 305,
Nanuet, New York 10954 ("**Park**") and L&L and Park collectively referred to as the "**Lenders**");
and **CAMP LOUEMMA LANE INC.,** with an address at
("**Camp Louemma**"); and **11 LOUEMMA LANE LLC,** with an address at
("**11 Louemma**"), with an address at                                    ; ("Camp Louemma
together with 11 Louemma individually and  collectively, "**Borrower**") and **MOSHE RUDICH,**
and individual residing at                                    ("**Rudich**");    and    **DAVID
GOLDWASSER,** an individual residing at 7028 Valencia Dr., Boca Raton, FL 33433
("**Goldwasser**") and Rudich and Goldwasser individually and collectively hereinafter referred to
as "**Guarantor**".

## PRELIMINARY STATEMENT

A.    On or about December 24, 2021 ("**Loan Origination Date**"), Lenders made a
consolidated extended, spread and modified loan ("**Loan**") in the consolidated aggregate  principal
amount of $3,000,000.00 to Borrower with respect to those certain parcels of real property together
with all of the improvements thereon and commonly known as "Camp Louemma" located in the
Borough of Sussex, County of Sussex and State of New Jersey ("**State**"), having addresses of 11
Louemma Lane Sussex, NJ 07461 and 43 Louemma Lane Sussex, NJ 07461 (collectively
hereinafter referred to in the singular as the "**Property**") and as are more particularly described in
the Mortgage and Security Agreement dated as of the Loan Origination Date executed by Borrower
in favor of Lenders, which Mortgage and Security Agreement was filed and recorded in the Office
of the Register of Deeds and Mortgages of Sussex County, NJ on August 5th, 2022 in mortgage
book 10185 at page 818 ("**Security Instrument**") and which Loan is evidenced or secured by,
among others, the documents described on the attached **Exhibit A** (together with all other
documents or agreements executed by Borrower in favor of L&L evidencing or securing the Loan,
as all of the listed documents and other documents may be amended, restated, supplemented,
extended, renewed, replaced or otherwise modified from time to time shall be collectively referred
to as "**Loan Documents**").

B.    Lenders are the current owners and holders of all rights, title and interest in and to
the Loan and the Loan Documents.

C.    The Loan is in default due to the failure of Borrower to pay the Debt (as hereinafter
defined) together with accrued interest thereon as well as the failure to pay real estate taxes on the
Property from and after May 1, 2022 (the "**Default**").

D.    As a result of the Default, L&L on behalf of the Lenders, declared the Debt
(hereinafter defined) to become immediately due and payable by written notice to the Borrower

Camp Louemma Forbearance Agreement

dated November 3, 2022 and thereafter commenced an action in the Superior Court of New Jersey Chancery Division, in and for Sussex County, NJ on November 22, 2022 ("**Foreclosure Action**") and in connection with which, a judgment of foreclosure and sale was issued on May 5, 2025 by The Honorable Frank J. Angelis ("**Judgment**") against Borrower and Guarantors in the amount of $5,322,971.57 together with interest thereon from March 18, 2025 and suit costs and attorney fees in the aggregate amount of $106,747.40 ("**Judgment Amount**") and that as of the Petition Date (as defined below) , the Debt is $5,697,900.13.

E.      On March 5, 2025, Lenders commenced an action against Goldwasser in the Fifteenth Judicial Circuit in and for Palm Beach County, FL ("**Guaranty Action**") for breach of a personal guaranty dated as of December 21, 2024 executed by Goldwasser in favor of Lender ("**Guaranty**").

F.      Following the entry of the Judgment, Borrower filed Chapter 11 Bankruptcy Cases in the United States Bankruptcy Court in and for the District of New Jersey ("**Bankruptcy Court**") on May 29, 2025 ("**Petition Date**") under Case Number 25-15658-MEH ("**Bankruptcy Case**").

G.      Pursuant to an order of The Honorable Mark E. Hall, United States Bankruptcy Judge in and for the District of New Jersey dated February 27, 2026 [Docket No. _____] ("**Order**"), the bankruptcy stay imposed on the Foreclosure Action was lifted in accordance with the terms of the Order which required a sale of the Property to close on or about April 25, 2026 or thereafter the automatic stay imposed pursuant to Section 362 of the Bankruptcy Code would be lifted thereafter in favor of the Lender to exercise all of its rights and remedies under the Judgment and Loan Documents including but not limited to the notice and foreclosure sale of the Property.

H.      Borrower and Guarantors have  requested that Lenders agree to adjourn the Bankruptcy Auction and Sale, and the subsequent Hearing To Approve The Bankruptcy Sale of the Property and forbear from exercising certain of its rights under the Loan Documents, and the Order, and stay or abate any and all activity in the Guaranty Action, on and subject to the terms and conditions set forth in this Agreement (the "**Requested Relief**").

I.      Lenders are willing to provide their consent to the Requested Relief, subject to the terms and conditions of this Agreement.

J.      This Agreement is subject to approval by the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**") and will be ineffective absent said approval.

In consideration of $10.00 paid by each of the Parties (as hereinafter defined) to the other, the mutual covenants herein contained, and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Parties agree as follows:

**ARTICLE 1**
**DEFINITIONS**

The terms set forth below have the meaning ascribed to them for purposes of this Agreement. Other capitalized terms contained in this Agreement shall have the meanings assigned

-2-

Camp Louemma Forbearance Agreement

to them herein. Any capitalized terms utilized in this Agreement and not defined in this Agreement shall have the meanings set forth in the Loan Documents.

1.1    **"Borrower Signatory"** means collectively both Moshe Rudich and David Goldwasser.

1.2    **"Borrower"** means collectively each of Camp Louemma Lane Inc., and 11 Louemma Lane LLC.

1.3    **"Debt"** means the total amount due from Borrower to Creditor under the Loan Documents, this Agreement, and at law or in equity, including advances made by Lender or any Servicer, together with any interest thereon. **"Debt"** also includes any and all other interest, debts, administrative charges, obligations and liabilities of Borrower under the Loan Documents or this Agreement, whether voluntary or involuntary, however arising.

1.4    **"Borrower Proceeding"** means any proceeding for relief, protection, reorganization, liquidation, dissolution or similar relief for Borrowers under any local, state, federal or other insolvency law or laws providing relief for Borrowers.

1.5    **"Collateral"** means and includes all of the Borrower's right, title, and interest in and to the Property together with all buildings, structures, and improvements now or hereafter located thereon. Collateral further includes all fixtures, equipment, and machinery attached to the property, as well as all easements, rights-of-way, and appurtenances now or hereafter belonging or relating thereto as well as all 'after-acquired property,' including any additions, improvements, or replacements to the Collateral made after the execution of this Agreement and Collateral also incorporates all rents, leases, issues, and profits arising from the Property, which are hereby assigned to the Lender as further security for the Loan.

1.6    **"Equity Funds"** means funds that constitute equity contributed to Borrower or any direct or indirect owner of Borrower (and not as a loan to Borrower or any other direct or indirect owner of Borrower) and not from rents, income or other revenue generated from or attributable to the Property or from any other collateral securing the Loan.

1.7    **"Forbearance Documents"** means collectively this Agreement and any and all documents executed in connection herewith.

1.8    **"Guarantor"** means collectively and individually Moshe Rudich and David Goldwasser.

1.9    **"Guarantor Joinder"** means the Joinder by and Agreement of Guarantor attached to this Agreement.

1.10    **"Lender Parties"** means, collectively, L&L Capital Partners LLC and Park National Capital Funding LLC, together with any and all of their respective trustees, servicers, all subsidiaries, parents and affiliates and each of the foregoing parties' predecessors in interest, and each and all of their respective past, present and future partners, members, managers, certificate holders, officers, directors, shareholders, employees, agents, contractors, attorneys,

-3-

Camp Louemma Forbearance Agreement

representatives, participants and heirs and each and all of the successors and assigns of each of the foregoing.

1.11    "**Party**" means any, and "**Parties**" means all, of the signatories to this Agreement.

1.12    "**Termination Event**" is defined in Section 7.1 hereof

## ARTICLE 2
## ACKNOWLEDGMENTS, WARRANTIES AND REPRESENTATIONS

Borrower acknowledges, warrants, represents and agrees as follows as of the Execution Date and Effective Date:

2.1    **Incorporation of Preliminary Statement**. To Borrower's actual knowledge, each of the Preliminary Statements set forth above is true in all material respects as of the Execution Date and Effective Date. Each of the Preliminary Statements is incorporated into this Agreement as if set forth in the text of this Agreement.

2.2    **Authority/ Approvals**.

(a)    11 Louemma Borrower. 11 Louemma Borrower is a duly organized and validly existing limited liability company in good standing under the laws of the State of New Jersey. Moshe Rudich is the managing member and Borrower Signatory of 11 Louemma Borrower. Moshe Rudich, acting alone without the joinder of any other officers, directors or members 11 Louemma Borrower or any other party, has the power and authority to execute and deliver the Forbearance Documents on behalf of and to duly bind 11 Louemma Borrower under this Agreement and the other Forbearance Documents. Except for the approval of the Bankruptcy Court, the execution and delivery of, and performance under, this Agreement and the other Forbearance Documents by 11 Louemma Borrower has been duly and properly authorized pursuant to all requisite limited liability company action of 11 Louemma Borrower and does not and will not (x) violate any provision of any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award presently in effect having applicability to 11 Louemma Borrower's operating agreement or any other organizational document of 11 Louemma Borrower or (y) result in a breach of or constitute or cause a default under any indenture, agreement, lease or instrument to which 11 Louemma Borrower is a party or by which the Property may be bound or affected. 11 Louemma Borrower has obtained the necessary approvals and authorizations from all applicable third parties, if any, in connection with any and all action taken or to be taken with respect to the Requested Relief and the execution of this Agreement, including but not limited to, as and to the extent applicable, any and all management companies, governmental authorities, and ground lessors.

(b)    Camp Louemma Borrower. Camp Louemma is a duly organized and validly existing not-for-profit organization in good standing under the laws of the State of New Jersey and is qualified to transact business and in good standing under the laws of the State. Moshe Rudich is the Borrower Signatory and Manager of Camp Louemma Borrower. Moshe Rudich, acting alone without the joinder of any other officers or directors of Camp Louemma Borrower or any other party, has the power and authority to execute and deliver the Forbearance Documents on

-4-

Camp Louemma Forbearance Agreement

behalf of and to duly bind Camp Louemma Borrower under this Agreement and the other Forbearance Documents. Except for the approval of this Agreement by the Bankruptcy Court, the execution and delivery of, and performance under, this Agreement and the other Forbearance Documents by Camp Louemma Borrower has been duly and properly authorized pursuant to all requisite corporate action of Camp Louemma Borrower and does not and will not (x) violate any provision of any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award presently in effect having applicability to Camp Louemma Borrower or Camp Louemma Borrower's certificate of formation or articles of organization, by laws or any other organizational document of Camp Louemma Borrower or (y) result in a breach of or constitute or cause a default under any indenture, agreement, lease or instrument to which Camp Louemma Borrower is a party or by which the Property may be bound or affected. Camp Louemma Borrower has obtained the necessary approvals and authorizations from all applicable third parties, if any, in connection with any and all actions taken or to be taken with respect to the Requested Relief and the execution of this Agreement, including but not limited to, as and to the extent applicable, any and all management companies, governmental authorities, and ground lessors.

2.3    **Status of Loan**.

(a)    <u>Loan Documents</u>.  The Loan Documents constitute valid and legally binding obligations of Borrower and subject only to the limitations set forth under applicable federal bankruptcy laws, are enforceable against Borrower and the Property in accordance with their terms. There are no modifications, verbal or written, to the Loan Documents other than as provided in the Forbearance Documents, if any. The Forbearance Documents do not constitute the creation of a new debt or the extinguishment of the debt evidenced by the Loan Documents, nor will they in any way affect or impair the liens and security interests created by the Loan Documents, which Borrower acknowledges to be valid and existing liens and security interests in the Property.  Borrower agrees that the lien and security interests created by the Loan Documents continue to be in full force and effect, unaffected and unimpaired by the Forbearance Documents or any collateral described in financing statements filed in connection with the Loan Documents and that said liens and security interests shall so continue in their perfection and priority until the debt secured by the Loan Documents is fully discharged.

(b)    <u>Debt</u>.  As of the Filing Date, the outstanding  balance of the Loan is $5,697,900.13 plus applicable interest, reasonable legal fees and costs incurred by Lenders (the "**Debt**" or "**Balance**")

(c)    <u>Continued Default</u>. Borrower is currently in default under the Loan Documents and the Interim Cash Collateral Order of the Bankruptcy Court [Docket No. 49], which defaults have not been cured.

(d)    <u>Transfer of Interests</u>. No holder of a direct or indirect beneficial ownership interest in any Borrower has assigned, transferred, pledged or otherwise disposed of all or any part of its beneficial ownership interests in Borrower since the Loan Origination Date.  The organizational structure given to Lender at the time of the Loan Origination Date is true, correct and complete in all respects and accurately reflects the ownership interests of every direct and indirect owner of each Borrower.

-5-

Camp Louemma Forbearance Agreement

(e)    Information.  All information provided to Lender by Borrower, Guarantor, or any of their respective employees, officers, directors, partners, members, managers or representatives, in connection with or relating to (i) the Requested Relief, (ii) this Agreement or the transactions contemplated hereby or (iii) the Property, contains no untrue statement of material fact and does not omit a material fact necessary in order to make such information not misleading, and the provision of any such information by Lender, is expressly consented to by Borrower and Guarantor and will not infringe upon or violate any intellectual property rights of any party.

(f)    Representations in Loan Documents.  The representations and warranties contained in the Loan Documents are true and correct as of the Execution Date and the Effective Date as if made on such dates.

(g)    No Novation or Release.  Except as otherwise expressly stated in any of this Agreement, neither this Agreement, nor any payments made or other actions taken pursuant to this Agreement, is intended to cure, and shall not be deemed or construed to cure the existing defaults under the Loan Documents, to create any "cash flow mortgage" or any similar arrangement with respect to the Loan or the Loan Documents, or to constitute a reinstatement, novation, or release of all or any portion of the Debt or the Loan Documents or to constitute a modification, amendment, or waiver of all or any portion of the Debt or the Loan Documents.  It is the intention of the Parties that the Loan remains in default notwithstanding this Agreement and, except as otherwise expressly stated in this Agreement, the Debt remains immediately due and payable in full. Except as otherwise expressly provided in this Agreement, Lender reserves all of its rights and remedies in connection with the Maturity Default and any other default or Event of Default that may exist under the Loan Documents.

## 2.4    Status of the Property.

(a)    Compliance with Laws.  Borrower has not received any written notice from any governmental entity claiming that Borrower or the Property is not presently in compliance with any laws, ordinances, rules and regulations bearing upon the use and operation of the Property, including, without limitation, any notice relating to building, zoning, environmental, life safety, wetlands, or handicapped accessibility laws, codes or regulations.  All permits, licenses or other evidences of authority to use and operate the Property as it is presently being operated and as contemplated by the Loan Documents are current, valid and in full force and effect.

(b)    Hazardous Substances.  No portion of the Property has been used in the past or will in the future be used for or in connection with the handling, generation, use, storage or disposal of Hazardous Substances.  No Hazardous Substances are located or will be located on or under or used or stored on or generated from any portion of the Property.  No above ground or underground storage tanks have in the past been or will in the future be located on or below the surface of any portion of the Property. No portion of the Property is included on any governmental agency's list of sites on or under which Hazardous Substances may be located, used, stored or generated or with respect to which remedial action may be necessary.  All federal, state and local permits concerning or related to environmental protection and regulation at the Property, if any, have been secured, are current and will continue to remain current, and Borrower is and will remain in compliance with the terms thereof.  There are no past or current releases and will be no future

-6-

Camp Louemma Forbearance Agreement

releases of Hazardous Substances on, over, at, from, into or onto the Property; and Borrower is not aware of any environmental condition, situation or incident on, at, or concerning the Property that could give rise to an action or to liability for environmental matters under any law, rule, ordinance or common law theory.

        (c)    <u>Receipt of Insurance Proceeds</u>.  Borrower has not received any business interruption insurance, business income insurance, rental income insurance or other insurance proceeds related to the performance of the Property or the operation of any business thereon prior to the Execution Date.  If business interruption insurance, business income insurance, rental income or other insurance proceeds related to the performance of the Property or the operation of any business thereon are paid and/or agreed to be paid by an insurer, Borrower shall comply with the Loan Documents in connection with the payment, treatment and application of such proceeds.

        (d)    <u>Receipt of Relief</u>.  No Borrower Party and no property manager for the Property, or any affiliate, subsidiary, officer, director, manager, member, partner, agent, service provider, attorney or direct or indirect owner of the foregoing, has received or applied for any governmental grant, loan or other economic or non-economic relief pertaining to the Property that has not been disclosed to Lender in writing.  By having entered into this Agreement, Lender shall not be construed to have consented to any such relief.

    2.5    **Continuity of Representations**.  The representations and warranties contained in this Agreement are true and correct in all material respects as of the Effective Date and the Execution Date and will survive the execution and delivery of and consummation of all transactions under this Agreement.

**ARTICLE 3**
**COVENANTS OF BORROWER**

Borrower covenants and agrees with Lender that:

    3.1    **Compliance with Loan Documents**.  To the extent not inconsistent with the terms of this Agreement, Borrower agrees to comply with and be bound by all the terms, covenants, agreements, conditions and provisions set forth in the Loan Documents.

    3.2    **Release and Covenant Not to Sue**.  In consideration of Lender's agreement to the terms of this Agreement, Borrower and Guarantor, by execution of the Guarantor Joinder, on behalf of themselves and their partners, members, officers, directors, shareholders, and trustees and each of their respective heirs, successors and assigns, remise, release, acquit, satisfy and forever discharge Lender Parties, from any and all manner of debts, accountings, bonds, warranties, representations, covenants, promises, contracts, controversies, agreements, liabilities, obligations, expenses, damages, judgments, executions, actions, claims, demands and causes of action of any nature whatsoever, at law or in equity, known or unknown, either now accrued or subsequently maturing, which any of them now has or hereafter can, shall or may have by reason of any matter, cause or thing, from the beginning of the world to and including the Execution Date, including, without limitation, matters arising out of or relating to (a) the Loan, (b) the Loan

-7-

Camp Louemma Forbearance Agreement

Documents, (c) the Debt, (d) the Property, and (e) any other agreement or transaction between Borrower and/or Guarantor and any of Lender Parties concerning matters arising out of or relating to the items set forth in subsections (a) - (d) above. Borrower and Guarantor, by execution of the Guarantor Joinder, on behalf of themselves their partners, members, officers, directors, shareholders, and trustees and each of their respective heirs, successors and assigns, covenant and agree never to institute or cause to be instituted or continue prosecution of any suit or other form of action or proceeding of any kind or nature whatsoever against any of Lender Parties by reason of or in connection with any of the foregoing matters, claims or causes of action.

In addition, upon the date of payoff of the Loan ("**Payoff Date**") in accordance with the terms of this Agreement, Borrower and Guarantor, by execution of the Guarantor Joinder, on behalf of themselves and their partners and members and each of their respective heirs, successors and assigns shall be deemed to have released, acquitted, satisfied and forever discharged Lender Parties from any and all manner of debts, accounting, bonds, warranties, representations, covenants, promises, contracts, controversies, agreements, liabilities, obligations, expenses, damages, judgments, executions, actions, claims, demands and causes of action of any nature whatsoever, whether at law or in equity, whether known or unknown, either now accrued or subsequently maturing, which any of them now or then has or hereafter can, shall or may have by reason of any matter, cause or thing, from the beginning of the world to and including the Payoff Date, concerning matters arising out of or relating to (a) the Loan, including, but not limited to, its administration or funding, (b) the Loan Documents and the Debt, (c) the Property or its development, financing and operation, (d) this Agreement, and (e) any other agreement or transaction between Borrower and/or Guarantor and Lender Parties concerning matters arising out of or relating to the items set forth in subparagraphs (a) through (d) above. Borrower and Guarantor, by execution of the Guarantor Joinder, on behalf of themselves and their partners and members and each of their respective heirs, successors and assigns, covenant and agree never to institute or cause to be instituted or continue prosecution of any suit or other form of action or proceeding of any kind or nature whatsoever against any of Lender Parties by reason of or in connection with any of the foregoing matters, claims or causes of action. If requested by Lender, Borrower and Guarantor shall execute and deliver to Lender a release prior to the Payoff Date reaffirming the provisions hereof. The provisions of this Section shall survive the payoff of the Loan.

3.3    **Hazardous Wastes**. Borrower agrees to promptly deliver to Lender any notices related to any of the matters described in **Section 2.6(d)** of this Agreement and to indemnify and save Lender harmless from any and all actions, claims, damages, liabilities and fees, punitive damages and penalties, directly or indirectly arising out of the generation, storage or disposal of hazardous materials, including, without limitation, the cost of any required or necessary repair, clean-up or detoxification. The provisions of this Section shall survive any satisfaction of the Loan or a release or reconveyance of the Security Instrument.

3.4    **Further Assurances**. Borrower shall execute and deliver to Lender any agreements, instruments, documents, financing statements and other writings as may be reasonably requested from time to time by Lender to perfect and to maintain the perfection of Lender's security interest in and to the Property and to consummate the transactions contemplated by or in the Loan Documents and this Agreement.

-8-

Camp Louemma Forbearance Agreement

## ARTICLE 4
## FORBEARANCE

4.1    **Forbearance**.  Subject to the terms of this Agreement and consent of the New Jersey Appellate Court with respect to the appeal by the Guarantor of the Judgment, and provided no Termination Event occurs, Lender agrees not to (a) conduct a foreclosure sale of the property encumbered by the Loan Documents ("**Property**") prior to June 7, 2026 (the "**Forbearance Expiration Date**") and (b) prosecute or otherwise take any action whatsoever to move the Guaranty Action toward judgment or other resolution.  The period from the Execution Date through June 6, 2026 shall be referred to as the "**Forbearance Period**."  The forbearance by Lender, subject to the terms and conditions of this Agreement, is referred to as the "**Forbearance Covenant**." Borrower agrees that the Forbearance Covenant does not relate or extend to any actions that Lender has taken prior to the Execution Date or that Lender may take under the Loan Documents or this Agreement, in equity or at law (x) to preserve and protect the Collateral or the interests of Lender in the Collateral, including, without limitation, (i) the filing of actions, or the defending of or intervention in actions (such as foreclosure proceedings) brought by third parties or by Borrower relating to the Collateral or the interests of Lender therein or (ii) the sending of notices to any persons or entities concerning the existence of security interests or liens in favor of Lender relating to the Collateral, or (y) in anticipation of instituting or continuing enforcement actions or exercising other remedies under the Loan Documents upon the termination or expiration of the Forbearance Period, including, without limitation, serving, filing or publishing any demands or notices required by contract or statute.  Borrower further acknowledges that the Loan will remain in special servicing during the Forbearance Period and until such time as the Debt is paid in accordance with this Agreement in full.

4.2    **Forbearance Payments; Interest Rate and Deferred Default Interest**.

Forbearance Payment.  On or before the Forbearance Expiration Date, the Borrowers shall either (i) have the terms of this Settlement approved and the Chapter 11 cases dismissed, or (ii) file and confirm a Plan of Reorganization in a form acceptable to the Lender.  Both options shall require the Borrower to pay to the Lender the amount of Five Million, Five Hundred Thousand Dollars ($5,500,000.00) (the "**Plan Payment**") on or before the Forbearance ~~Effective Date~~. *Expiration date*

Interest Rate and Deferred Default Interest.

Notwithstanding the Forbearance Payments required by **Section 4.2(a)** or any other provision to the contrary set forth in this Agreement or the other Loan Documents, as of and following the Effective Date and during the Forbearance Period, interest on the then outstanding principal balance of the Loan shall accrue at the Default Interest Rate of 24% as set forth in the Loan Documents which shall be chargeable against the Borrower and Guarantors and due and payable  in the event of a Termination Event.

## ARTICLE 5
## PAYMENT OF THE DEBT

5.1    **Payment of Debt**.

-9-

Camp Louemma Forbearance Agreement

(i)      Prior to the Forbearance Expiration Date, Lender will accept the payment of the Plan Payment from the Borrower in full satisfaction of the obligations of Borrower and Guarantors under the Loan Documents.

(ii)      Within five (5) business days of Lender's receipt of the indefeasible payment of the Plan Payment in accordance with and pursuant to Article 5.1(i) above, Lender will execute a stipulation of dismissal with prejudice of the Guaranty Action to be filed by the Guarantor in the Guaranty Action.

5.2      **Personal to Borrower**. The terms of this Agreement shall be personal to Borrower and shall not be assumable in connection with any sale, assignment or transfer of the Property or inure to the direct or indirect benefit to any transferee in connection with any sale, assignment or transfer of direct or indirect interests in Borrower. Each of Borrower and Guarantor, by execution of the Guarantor Joinder, acknowledges and agrees that from and after the Effective Date, none of Borrower, Guarantor or any party acting through or on behalf of them, including but not limited to the Borrower Parties, have any right or ability to cause the Loan or any part thereof to be assumed by or benefit any another person or entity.  For the avoidance of doubt, any permitted transfers under the Loan Documents without Lender consent, if any, shall no longer be permitted. Any violation of the foregoing shall be an Event of Default and Termination Event under this Agreement and the other Loan Documents.

5.3      **No Subordinate or Mezzanine Financing**. Borrower and Guarantor, by execution of the Guarantor Joinder, acknowledge and agree that Borrower and Guarantor shall have no right to obtain any subordinate or mezzanine financing of any kind with respect to the Property or interests in Borrower at any time prior to the Loan being paid and the Property released from the lien of the Security Instrument. All references in the Loan Documents to any permitted subordinate financing and/or mezzanine financing shall be deleted and of no further force or effect.

5.4      **Joinders**. As a condition to Lender's execution of this Agreement, simultaneously with the execution of this Agreement, Guarantor shall execute and deliver to Lender the Guarantor Joinder in form and substance attached hereto, and Manager shall execute and deliver to Lender the Manager Joinder in form and substance attached hereto.

5.5      **UCC Financing Statements**. Borrower hereby grants and confirms unto Lender a first lien priority interest in all Collateral to the maximum extent permitted by the Uniform Commercial Code, as amended subsequent to the making of the Loan.  Borrower hereby further consents to the filing of any financing statements or Uniform Commercial Code forms required to be filed in the applicable states or any other filing office (collectively, "**Filings**") in order to perfect said interest and, notwithstanding anything contained in any of the Loan Documents to the contrary, in accordance with the Uniform Commercial Code, as amended subsequent to the making of the Loan, said Filings may be made by Lender without the consent or signature of Borrower.

**ARTICLE 6**
**CONDITIONS PRECEDENT**

-10-

Camp Louemma Forbearance Agreement

The effectiveness of this Agreement and Lender's obligations hereunder are conditioned upon the fulfillment by Borrower Parties of all of the following conditions precedent, in addition to Borrower Parties' compliance with all of their other obligations set forth in this Agreement:

6.1     **Documents to be Delivered to Lender**.

(a)     Borrower shall deliver, or cause to be delivered, to Lender, in form and substance satisfactory to Lender, all of the following on or prior to the Execution Date:

(1)     this Agreement, duly executed by Borrower;

(2)     the Guarantor Joinder, duly executed by Guarantor;

(3)     A Plan of Reorganization or 9019 settlement order / dismissal order acceptable to Lender in its sole and absolute discretion.

(4)     such other Borrower Party-related or Property-related information and/or documentation as may be required by Lender, in its sole discretion.

6.2     **Required Payments**.

(a)     Escrow Deposit for Plan Payment . On the Execution Date, Borrower or Guarantor shall pay Lender a non-refundable deposit in the amount of $1,000,000.00 ("**Deposit**"), to be applied by Lender to such portion(s) of the Debt as provided herein. Borrower acknowledges and agrees that the Deposit shall be deemed earned by Lender and due to Lender upon execution of this Agreement by Lender and applied by Lender upon receipt; *provided, however*, that, notwithstanding anything to the contrary herein or otherwise, in the event that the Bankruptcy Court does not approve a Plan of Reorganization or the terms of the settlement contemplated herein / dismissal prior to the Forbearance Expiration Date, the Deposit shall be returned to Borrower. Absent a Termination Event, Lender shall apply the  to and as a credit toward the Plan Payment. In the event of a Termination Event, the Deposit shall be applied to the Balance.

6.3     **Carve Out.**     Provided Borrower and Guarantors timely comply with the terms of this Agreement and there is no Termination Event, Lender's will agree to a carve out (**the "Carve Out"**) from the Plan Payment in the amount of $30,000 to be used to pay Bankruptcy Court approved fees and expenses of Borrower's counsel. Additionally, the Lender shall set aside funds sufficient to satisfy  U.S. Trustee fees due and unpaid through the effective date of a plan of reorganization or dismissal.

-11-

Camp Louemma Forbearance Agreement

## ARTICLE 7
## TERMINATION EVENTS; REMEDIES

7.1    **Termination Events**.  For purposes of this Agreement, each of the following shall constitute a Termination Event:

(a)    Payments.  If Borrower shall fail to pay any payment provided for in this Agreement when the same shall become due and after the expiration of any applicable grace or cure period.

(b)    Debt.  If Borrower fails to pay Lender the Plan Payment on or before the Forbearance Expiration Date.

(c)    Misrepresentations.  If any representation or warranty of Borrower or Guarantor in this Agreement or Guarantor Joinder shall be untrue or inaccurate in any material respect,

(d)    Breach of Other Covenants.  If Borrower or Guarantor fails to timely perform any obligation of Borrower or Guarantor under the Loan Documents or this Agreement.

(e)    Bankruptcy or Insolvency Action.  If Guarantor files or becomes subject to any Bankruptcy case or similar insolvency proceeding under applicable state law.

(f)    Legal Action.  If Borrower shall, directly or indirectly, file or institute, or cause to be filed or instituted or cooperate in the filing or institution against any of Lender Parties, any lawsuit, complaint, administrative claim, adversary proceeding, or other legal action relating, directly or indirectly, to the Property or the Loan.

(g)    Other Events of Default.  Any other Event of Default (other than the Maturity Default) occurs under the Loan Documents not specifically described above.

7.2    **Lender's Rights upon Occurrence of Termination Event**.

(a)    Upon the occurrence of a Termination Event after the Effective Date, Lender's obligations under this Agreement, including, without limitation, the Forbearance Covenant, shall immediately and without further notice to Borrower, terminate and be of no further force and effect and Lender shall immediately be entitled, without further notice to any Borrower Party to exercise any or all of Lender's rights and remedies under this Agreement and the Loan Documents, in equity and at law (all of such rights and remedies being cumulative), including, but not limited to and as determined by Lender in its sole discretion, including but not limited to the notice and sale of the Property and continuation of the enforcement of the Judgment against the Guarantors.

(b)    In consideration of and as a material inducement to Lender to grant the Forbearance Covenant, Borrower Parties agree to waive and does hereby waive and release any and all defenses and other rights they may otherwise have to contest a Termination Event occurring after the Effective Date and Lender's Enforcement Actions in connection therewith and agree not

-12-

Camp Louemma Forbearance Agreement

to challenge in any way the validity of and to fully cooperate and comply with any Receivership Proceedings or Foreclosure Proceedings related to the Property and/or the Other Collateral or any other exercise by Lender of its rights and remedies under this Agreement and the Loan Documents, in equity or at law, whether pending on the Effective Date or commenced by Lender following the occurrence of a Termination Event.

7.3    **Consensual Sale**.

(a)    Upon the occurrence of a Termination Event after the Effective Date, at Lender's sole discretion, Lender may notice and conduct a foreclosure sale of the Property or at Lender's option, participate in the Auction sale process which has been adjourned by the Bankruptcy Court to May 25, 2026 Borrower and Guarantors waive any right to contest the foreclosure sale, the adequacy of the foreclosure sale price and the method and manner Lender conducts the foreclosure sale.

7.4    **Conveyance Documents**. Upon the occurrence of a Termination Event or an Event of Default after the Effective Date and in connection with a Foreclosure Judgment, or a Deed in Lieu of Foreclosure or a Consensual Sale, Borrower shall execute and deliver to Lender or its designee or a Potential Purchaser all documents necessary to convey to Lender or its designee or a Potential Purchaser all ownership and development rights with respect to the Property, including, without limitation, a special warranty deed or its equivalent, owner's affidavits and other customary affidavits and certificates, including tax withholding certificates, all applicable state and local transfer forms and bulk sales releases required in connection with such a conveyance, a bill of sale, an assignment and/or other conveyance documents necessary to transfer, convey and assign all leases, any service contracts for which Lender or its designee agrees to accept an assignment, all tangible and intangible, real and personal and mixed property used, useable or intended to be used in connection with the ownership, management and/or use of the Property, and all rights of Borrower to use any trademarks and logos for all or any portion of the Property or the operations on the Property, and such documents and instruments, including, without limitation, evidence of the authority of Borrower to convey the Property to Lender or its designee and the good standing of Borrower, as Lender, its designee or a Potential Purchaser or the title company insuring title to the Property may determine are necessary to issue to Lender or its designee or a Potential Purchaser an owner's title insurance policy insuring the fee simple title to the Property, subject only to the Permitted Encumbrances. As further consideration of and as a material inducement to Lender to enter into this Agreement, Borrower shall not Interfere with or oppose Lender in and hereby consents to any (i) action to quiet title, if any, which may be instituted by Lenders and/or any title company on behalf of Lender to perfect its right, title and interest in the Property, and (ii) Lender or its designee substituting into any condemnation proceedings with respect to the Property, if any.

7.5    **Property Materials**. If following a Termination Event after the Effective Date a sheriff's, clerk's or trustee's deed for the Property is issued to Lender or its designee pursuant to a judicial or trustee's sale, or if Lender or its designee acquires the Property by Deed in Lieu of Foreclosure or otherwise, or if a Consensual Sale of the Property is consummated in accordance with this Agreement, promptly upon request by such acquiring party, Borrower shall deliver and/or pay to Lender or its designee or a Potential Purchaser the following as to all or any portion of the

-13-

Camp Louemma Forbearance Agreement

Property acquired by Lender or its designee or a Potential Purchaser: (i) possession of the Property, subject to the rights of tenants; (ii) the originals (or true and correct copies, if the originals are not available) of all guaranties and warranties given with respect to all or any portion of the Property or any improvement located thereon which Borrower has in its possession, (iii) the originals (or true and correct copies, if the originals are not available) of all service contracts and management agreements then in effect with respect to the Property, (iv) the originals (or true and correct copies, if the originals are not available) of all plans, specifications, working drawings and surveys of or relating to the Property or to the construction of the buildings and related improvements located thereon, (v) the originals (or true and correct copies, if the originals are not available) of all governmental consents, approvals, licenses, permits, certificates of occupancy, zoning approvals, building permits and similar documents relating to the Property, (vi) copies of all books and records in any way relating to the Property, (vii) the balance of any funds in any security deposit accounts and any and all other tenant security deposits, and any and all advance rentals or similar fees, if any, (viii) the originals (or true and correct copies, if the originals are not available) of all termite or other inspection reports, bonds, warranties and guaranties relating to the Property, (ix) any and all income from the Property received by or on behalf of Borrower and then being held by or on behalf of Borrower; (x) the originals (or true and correct copies, if the originals are not available) of all certificates, binders and policies of insurance relating to the Property, (xi) the originals (or true and correct copies, if the originals are not available) of all contracts and agreements with contractors, architects, engineers, surveyors and others relating to all or any portion of the Property, (xii) the originals (or true and correct copies, if the originals are not available) of all tenant leases and occupancy agreements affecting all or any portion of the Property, (xiii) all leasing and other files, books and records with respect to all or any portion of the Property, and (xiv) any bankruptcy claims relating to any current or former tenant of the Property, duly assigned to Lender or its designee or a Potential Purchaser.

7.6    **Cooperation Covenants**.  The covenants and agreements of Borrower Parties contained in this Agreement shall be referred to as "**Cooperation Covenants**". Borrower Parties shall be subject to personal liability for the full Debt and all other obligations of Borrower to Lender under the Loan Documents for any failure of any Borrower Party after a Termination Event or an Event of Default occurring after the Effective Date to comply with, or any attempt by any Borrower Party after a Termination Event or an Event of Default occurring after the Effective Date to Interfere with Borrower Parties' compliance with, the Cooperation Covenants.

## ARTICLE 8
## MISCELLANEOUS

8.1    **Relationship with Loan Documents**.  To the extent that this Agreement is inconsistent with the other Loan Documents, this Agreement will control and the other Loan Documents will be deemed to be subject to the terms of this Agreement.  Except as modified by this Agreement, the Loan Documents shall remain unmodified and in full force and effect.  This Agreement constitutes a Loan Document under the Loan Agreement and the other Loan Documents.  This Agreement is a written agreement as contemplated by the Pre-Negotiation Letter.

-14-

Camp Louemma Forbearance Agreement

8.2     **Survival of Provisions**.   The covenants, acknowledgements, representations, agreements and obligations contained in this Agreement shall survive the consummation of the transactions contemplated by this Agreement.

8.3     **No Limitation of Remedies**.   No right, power or remedy conferred upon or reserved to or by Lender in this Agreement is intended to be exclusive of any other right, power or remedy conferred upon or served to or by Lender under this Agreement, the Loan Documents or at law.  Each and every remedy shall be cumulative and concurrent, and shall be in addition to each and every other right, power and remedy given under this Agreement, the Loan Documents or now or subsequently existing in equity or at law.

8.4     **No Waivers**.  Except as otherwise expressly set forth in this Agreement, nothing contained in this Agreement shall constitute a waiver of any rights or remedies of Lender under the Loan Documents, in equity or at law.  No delay or failure on the part of any Party in the exercise of any right or remedy under this Agreement shall operate as a waiver, and no single or partial exercise of any right or remedy shall preclude other or further exercise thereof or the exercise of any other right or remedy.  No action or forbearance by any Party contrary to the provisions of this Agreement shall be construed to constitute a waiver of any of the express provisions.  Any Party may in writing waive any of such Party's rights under this Agreement without invalidating this Agreement or the Loan Documents without invalidating this Agreement or the Loan Documents.

8.5     **Successors or Assigns**.   Whenever any Party is named or referred to in this Agreement, the heirs, executors, legal representatives, successors, successors-in-title and assigns of such Party shall be included.  All covenants and agreements in this Agreement shall bind and inure to the benefit of the heirs, executors, legal representatives, successors, successors-in-title and assigns of the Parties, whether so expressed or not.

8.6     **Construction of Agreement**.  Each Party acknowledges that it has participated in the negotiation of this Agreement.  No provision of this Agreement shall be construed against or interpreted to the disadvantage of any Party by any court or other governmental or judicial authority by reason of such Party having or being deemed to have structured, dictated or drafted such provision.  Borrower at all times has had access to an attorney in the negotiation of the terms of and in the preparation and execution of this Agreement.  Borrower has had the opportunity to review and analyze this Agreement for a sufficient period of time prior to execution and delivery.  No representations or warranties have been made by or on behalf of Lender, or relied upon by Borrower, pertaining to the subject matter of this Agreement, other than those set forth in this Agreement.  All prior statements, representations and warranties, if any, are totally superseded and merged into this Agreement, which represents the final and sole agreement of the Parties with respect to the subject matters of this Agreement.  All of the terms of this Agreement were negotiated at arm's length, and this Agreement was prepared and executed without fraud, duress, undue influence or coercion of any kind exerted by any of the Parties upon the others.  The execution and delivery of this Agreement is the free and voluntary act of Borrower.

8.7     **Invalid Provision to Affect No Others**.  If, from any circumstances whatsoever, fulfillment of any provision of this Agreement or any transaction related thereto at the time performance of such provision shall be due, shall involve transcending the limit of validity

-15-

Camp Louemma Forbearance Agreement

presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity. If any clause or provision operates or would prospectively operate to invalidate this Agreement, in whole or in part, then such clause or provision only shall be deemed deleted, as though not contained, and the remainder of this Agreement shall remain operative and in full force and effect.

8.8    **Usury**. This Agreement and all other agreements made by Borrower relating directly or indirectly to the Debt are expressly limited so that in no event or contingency whatsoever shall the amount of interest received, charged or contracted for by Lender exceed the highest lawful amount of interest permissible under the laws of the State. If, under any circumstances whatsoever, performance of any provision of the Note, the other Loan Documents or this Agreement, at the time performance of such provision shall be due, shall result in the highest lawful rate of interest permissible under the laws of the State being exceeded, then ipso facto, the amount of interest received, charged or contracted for by Lender shall be reduced to the highest lawful amount of interest permissible under the laws of the State, and if for any reason whatsoever, Lender shall ever receive, charge or contract for, as interest, an amount which would be deemed unlawful, such amount of interest deemed unlawful shall be applied to principal (whether or not due and payable) or refunded to Borrower (if all principal has been paid) and not to the payment of interest.

8.9    **Notices**. Any and all notices, elections, approvals, consents, demands, requests and responses permitted or required to be given under this Agreement or the Loan Documents, if given to Lender, must be addressed as follows, subject to change as provided in the Loan Documents:

L&L Capital Partners LLC


Attn: Adam Nagin


Park National Capital Funding LLC
25 Smith Street, Suite 305,
Nanuet, New York 10954
Attn: Kenneth Schaum

With copies to:

Goetz Platzer LLP
1325 Avenue of the Americas, 14th Floor
New York, NY 10019
Attn: Linda Gates, Esq and Cliff Katz, Esq

And a further copy to          Marc Wohglemuth & Associates, P.C.
300 Tice Blvd, Ste 287
Woodcliff Lake, NJ 07677

-16-

Camp Louemma Forbearance Agreement

Attn: Marc Wohlgemuth, Esq

and, if given to Borrower, must be addressed as follows, in its capacity as Notice Owner, to the address set forth in the Loan Documents:

8.10   **Governing Law**. This Agreement shall be interpreted, construed and enforced in accordance with the provisions of Section 10.3 of the Loan Agreement which are incorporated herein by reference.

8.11   **Future Negotiations**. Borrower acknowledges and agrees that (i) Lender has no obligation whatsoever to discuss, negotiate or to agree to any restructuring of the Loan, or any modification, amendment, restructuring or reinstatement of the Loan Documents or to forbear from exercising its rights and remedies under the Loan Documents, except as expressly provided in this Agreement; (ii) if there are any future discussions among Lender and Borrower concerning any such restructuring, modification, amendment or reinstatement, then no restructuring, modification, amendment, reinstatement, compromise, settlement, agreement or understanding with respect to the Loan, the Loan Documents, the Property or any aspect thereof shall constitute a legally binding agreement or contract or have any force or effect whatsoever unless and until reduced to writing and signed by authorized representatives of the Parties; and (iii) Borrower Parties shall not assert or claim in any legal proceedings or otherwise that any such agreement exists except in accordance with the terms of this Section.

8.12   **Relationship of Parties**. The Parties do not intend by this Agreement to create a partnership or a joint venture. Neither this Agreement nor any of the payments herein or in the Note to be made by either Borrower or Lender shall constitute, or shall be deemed or construed to constitute, Lender a "mortgagee in possession" of the Property or in any manner liable for any goods or services delivered or provided with respect to the Property or in any manner liable to any third parties. The relationship of Lender to Borrower is that of "lender" and "borrower" and the Parties acknowledge and agree that the obligations of Lender and Borrower set forth herein are not intended to benefit and should not be relied on by third parties.

8.13   **Headings**. The headings of the articles, sections and subsections of this Agreement are for the convenience of reference only and are not to be considered a part of this Agreement, and shall not be used to construe, limit, or otherwise affect any of such documents.

8.14   **Modifications**. The terms of this Agreement may not be changed, modified, waived, discharged, or terminated orally, but only by an instrument or instruments in writing, signed by the Party against whom the enforcement of the change, modification, waiver, discharge or termination is asserted.

8.15   **Time of Essence; Consents**. Time is of the essence of this Agreement and the Loan Documents. Any provisions for consents or approvals in this Agreement shall mean that such consents or approvals shall not be effective unless in writing and executed by Lender.

8.16   **Counterparts**. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, and all such counterparts together shall constitute one and the

-17-

Camp Louemma Forbearance Agreement

same instrument.  Documents executed, scanned (in .PDF or similar reprographic format), and/or executed (and, as appropriate, witnessed and/or notarized) electronically using electronic signature software (e.g., DocuSign or similar software), or similar methods (each a method of "**Electronic Execution**") and transmitted electronically shall be deemed original signatures for purposes of this Agreement and all matters related thereto, with such Electronic Execution having the same legal and binding effect as original signatures.  The Parties agree that this Agreement may be accepted, executed or agreed to through the use of an electronic signature in accordance with the Electronic Signatures in Global and National Commerce Act (E-Sign Act), Title 15, United States Code, Sections 7001 et seq., the Uniform Electronic Transaction Act (UETA) and any applicable state law.  Any document accepted, executed or agreed to in conformity with such laws will be binding on all Parties the same as if it were physically executed and Borrower and Guarantor hereby consent to the use of any third party electronic signature capture service providers as may be chosen by Lender.

       8.17  **Waiver of Trial by Jury**.  The provisions of Section 10.7 of the Loan Agreement are hereby incorporated by reference and are applicable to this Agreement as between Borrower and Lender.

(REMAINDER OF PAGE INTENTIONALLY LEFT BLANK)

-18-

Camp Louemma Forbearance Agreement

The Parties have executed and delivered this Agreement as of the date and year first above written.

LENDERS:

L&L CAPITAL PARTNERS LLC
a New York limited liability company

By:_____
Name: Adam Nagin
Title: Manager


PARK NATIONAL CAPITAL FUNDING LLC
a New York limited liability company

By:_____
Name: Kenneth Schaum
Title: Manager


STATE OF NEW YORK )

Camp Louemma Forbearance Agreement

COUNTY OF  NY                )ss.
                                         )

On  April 24 2026  before me, the undersigned, a notary public in and for said state, personally appeared Adam Nagin, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

DANIEL TOBIAS
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01TO4998848
Qualified in New York County
Commission Expires July 13, 2026

STATE OF NEW YORK  )
                                      )ss.
COUNTY OF                    )

On  April 24 2026  before me, the undersigned, a notary public in and for said state, personally appeared Kenneth Schaum, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

[Signatures continue on following page]

Notary Public
State of New York
Qualified in Rockland
Marshall F Katz
Reg #01KA6167354
Commission Expires:  5/27/27

Camp Louemma Forbearance Agreement

4923-9422-6074, v. 1

BORROWER:

11 LOUEMMA LANE LLC,
a New Jersey limited liability company

By: _____

Name:  Moshe Rudich
Title:   Managing Member

CAMP LOUEMMA LANE INC.
A New Jersey Not-For-Profit Organization

By: _____

Name:  Moshe Rudich
Title:   President

Camp Louemma Forbearance Agreement

4923-9422-6074, v. 1

Florida

STATE OF ~~NEW JERSEY~~ )
                        ) ss:
COUNTY OF Broward        )

This instrument was acknowledged before me on ___April 28___, 2026 by Moshe Rudich, the managing member of 11 Louemma Lane LLC, a New Jersey limited liability company, on behalf of said company.

GEREMY T. JORDAN
Commission # HH 529813
Expires May 22, 2028

_____
Notary Public Signature

_____
Greemy Jordan
Printed Name of Notary

My Commission Expires:

___5/22/28___

STATE OF NEW JERSEY )
                    ) ss:
COUNTY OF           )

This instrument was acknowledged before me on ___April 28___, 2026 by Moshe Rudich, the President of Camp Louemma Lane Inc., a New Jersey not-for-profit organization, on behalf of said company.

GEREMY T. JORDAN
Commission # HH 529813
Expires May 22, 2028

_____
Notary Public Signature

_____
Greemy Jordan
Printed Name of Notary

My Commission Expires:

___5/22/28___

Camp Louemma Forbearance Agreement

4923-9422-6074, v. 1

Camp Louemma Forbearance Agreement

## JOINDER BY AND AGREEMENT OF GUARANTOR

**Moshe Rudich**, an individual ("**Rudich Guarantor**") and **David Goldwasser**, an individual ("**Goldwasser Guarantor**"), being collectively and individually "**Guarantor**"), being guarantor(s) of the Loan (as such term is defined in that certain Forbearance Agreement of even date herewith by and between **L&L CAPITAL PARTNERS LLC**, with an address at ("**L&L**"); **PARK NATIONAL CAPITAL FUNDING LLC**, with an address at 25 Smith Street, Suite 305, Nanuet, New York 10954 ("**Park**") and L&L and Park collectively referred to as the "**Lenders**"); and **CAMP LOUEMMA LANE INC.**, with an address at ("**Camp Louemma**"); and **11 LOUEMMA LANE LLC**, with an address at ("**11 Louemma**"), with an address at ; ("Camp Louemma together with 11 Louemma individually and collectively, "**Borrower**") ("**Forbearance Agreement**") pursuant to the personal guarantees dated as of December 21, 2024 executed by Guarantor in favor of Lender as same is now held by Lender (the "**Guaranty Documents**"), hereby represents and warrants and acknowledges and agrees with Lender the following:

1. _Reaffirmation of Guaranty Documents_. The Guaranty Documents constitute the valid, legally binding obligation of Guarantor, enforceable against Guarantor, in accordance with their respective terms. Guarantor consents to the execution and delivery of the Forbearance Agreement and any other Forbearance Documents by Borrower and agrees and acknowledges that the liability of Guarantor under the Guaranty Documents shall not be diminished in any way by the execution and delivery of the Forbearance Documents or by the consummation of any of the transactions contemplated thereby and that the term "**Guaranteed Obligations**" under the Guaranty shall include fraud or intentional misrepresentation by Borrower in the Forbearance Documents.

2. **Withdrawal of Appeal.** Guarantors agree to withdraw the appeal currently pending with respect to the decision of The Honorable Frank J. Angelis in the amount of $5,322,971.57 together with interest thereon from March 18, 2025.

3. _Amendment to Guaranty_. Without limiting the terms of the Guaranty Documents, (i) Guarantor agrees that any failure of Borrower after a Termination Event or Event of Default (other than the Maturity Default) after the Effective Date to comply, or any attempt by Guarantor after a Termination Event or an Event of Default (other than the Maturity Default) after the Effective Date to Interfere with Borrower's compliance, with the Cooperation Covenants shall subject Guarantor to recourse for the full Debt, and (ii) Guarantor agrees to pay the Title Indemnification Costs under _Section 2.6(a)_ of the Forbearance Agreement.

4. _Waiver of Trial by Jury_. GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY AND ALL RIGHTS IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS AGREEMENT, THE NOTE, THE SECURITY INSTRUMENT, OR ANY OTHER LOAN DOCUMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN), OR ACTIONS OF GUARANTOR OR LENDER RELATING TO THE LOAN AND THE LENDING RELATIONSHIP WHICH IS THE SUBJECT OF THIS AGREEMENT. THIS

Camp Louemma Forbearance Agreement

PROVISION IS A MATERIAL INDUCEMENT FOR LENDER ENTERING INTO THIS AGREEMENT AND THE OTHER FORBEARANCE DOCUMENTS. LENDER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY GUARANTOR.

5.      Governing Law. This Guarantor Joinder shall be interpreted, construed and enforced in accordance with the governing law provisions of the Guaranty Documents.

6.      Defined Terms. All terms that are used herein that are not defined herein shall have the meaning ascribed to them in the Forbearance Agreement and, if not defined therein in the Loan Agreement or Loan Documents.

(REMAINDER OF PAGE INTENTIONALLY LEFT BLANK)

Camp Louemma Forbearance Agreement

4923-9422-6074, v. 1

Guarantor has executed and delivered this Guarantor Joinder to be effective as of the Effective Date of the Forbearance Agreement.

GUARANTOR:

_____
MOSHE RUDICH, an individual

_____
DAVID GOLDWASSER, an individual

Camp Louemma Forbearance Agreement

Florida

STATE OF ~~NEW JERSEY~~ )
                          ) ss:
COUNTY OF Brevard )

On __April 28__ , 2026 before me, ___Geremy T. Jordan___ Notary Public in and for said county, personally appeared **Moshe Rudich** (signer/witness) who has satisfactorily identified himself as the signer or witness to the above-referenced document.

GEREMY T. JORDAN
Commission # HH 529813
Expires May 22, 2028

_____
Notary Public Signature

(Affix Notary Stamp Here)

My Commission Expires:

__5/22/28__

STATE OF FLORIDA )
                          ) ss:
COUNTY OF Brevard )

On __April 28__ , 2026 before me, ___Geremy T. Jordan___ Notary Public in and for said county, personally appeared **David Goldwasser** (signer/witness) who has satisfactorily identified himself as the signer or witness to the above-referenced document.

GEREMY T. JORDAN
Commission # HH 529813
Expires May 22, 2028

_____
Notary Public Signature

(Affix Notary Stamp Here)

My Commission Expires:

__5/22/2028__

Camp Louemma Forbearance Agreement

4923-9422-6074, v. 1

**EXHIBIT B**

[Proposed Order]

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**
*Caption in Compliance with D.N.J. LBR 9004-1(a)*

**A.Y. STRAUSS LLC**
Eric H. Horn, Esq.
David S. Salhanick, Esq.
Maria A.G. Harper, Esq.
290 West Mount Pleasant Avenue, Suite 3260
Livingston, New Jersey 07039
Tel. (973) 287-5006
Fax (973) 533-0127

*Counsel to the Debtors and*
*Debtors in Possession*

|  |  |
|---|---|
| In re:<br><br>Camp Louemma Lane Inc., *et al.*,<br><br>                                  Debtors. | Chapter 11<br><br>Case No. 25-15658 (EJO)<br><br>(Jointly Administered) |

**[PROPOSED] ORDER (I) APPROVING THE SETTLEMENT BY AND AMONG THE
DEBTORS AND THE LENDER, AND (II) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered two (2) through three (3), is hereby

**ORDERED**.

Case Name:      Camp Louemma Lane Inc., *et al*.
Case Number:   25-15658  (EJO) (jointly administered)
Name of Order: Order Approving the Settlement by and among the Debtors and the Lender
Page Number:   2 of 3

THIS MATTER having come before the Court on the *Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 9019(a) (I) Approving the Settlement by and Among the Debtors and the Lender, and (ii) Granting Related Relief* (the "**Motion**"),[1] seeking the entry of an order, under sections 105(a) and 363 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (as amended, the "**Bankruptcy Code**"), and Rule 9019 and 6004 of the Federal Rules of bankruptcy Procedure (as amended, the "**Bankruptcy Rules**").

The Court having:  (i) considered the Motion and all documents and exhibits submitted in connection therewith; (ii) reviewed all responses, objections, and replies filed in connection with the Motion; and (iii) conducted a hearing on the Motion on _____, 2026 (the "**Hearing**"); and upon the record created at the Hearing and in these chapter 11 cases; and the Court having found and determined that the relief requested in the Motion and provided for herein is in the best interests of the Debtors, their estates, and their creditors; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY FOUND, DETERMINED, AND ORDERED that:

1.      The Motion is **GRANTED**, as set forth herein.

2.      Except as provided to the contrary herein, all objections to the Motion or the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

---

[1]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Agreement and/or in the Motion.

Case Name:    Camp Louemma Lane Inc., *et al*.
Case Number:    25-15658  (EJO) (jointly administered)
Name of Order: Order Approving the Settlement by and among the Debtors and the Lender
Page Number:    3 of 3

3.    The settlement, as memorialized in the Settlement Agreement by and between the

Parties, which is attached to the Motion as Exhibit A, is hereby approved in all respects, pursuant

to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 9019, and the terms therein are incorporated by

reference herein.

4.    This Order shall be effective and enforceable immediately upon entry and its

provisions shall be self-executing.

5.    The terms of this Order and the Settlement Agreement shall survive dismissal and /

or conversion and shall be enforceable.

6.    The Court shall retain jurisdiction over any matter arising from, and/or related to,

this Order or the relief granted herein.